UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ACUITY a/s/o MICHAEL S. KILLAM
ENTERPRISES, INC.,

        Plaintiff,                        Civil Case No. 15-11907
                                              Honorable Linda V. Parker

v.

NICK'S TRUCKING & EXCAVATING, LLC,

        Defendant.
_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

    Plaintiff Acuity ("Acuity"), as subrogee of its insured, Michael S. Killam Enterprises, Inc. ("Killam"), filed this lawsuit against Defendant Nick's Trucking & Excavating, LLC ("Nick's"), seeking to recover damages to cargo under the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706. On May 25, 2016, Nick's filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (ECF No. 19.) The deadline for Acuity to file a response to the motion was June 20, 2016. *See* E.D. Mich. LR 7.1(e)(1)(B); Fed. R. Civ. P. 6(d). No response has been filed. On June 29, 2016, this Court issued a notice dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f).

I.      **Summary Judgment Standard**

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact."  *Id*. at 323.  Once the movant meets this burden, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial."  *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted).  To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient.  *See Liberty Lobby*, 477 U.S. at 252.

When no response is filed to a summary judgment motion, the district court may rely upon the facts advanced by the movant. *Spurlock v. Whitley*, 79 F. App'x 837, 839 (6th Cir. 2003) (unpublished). As the Sixth Circuit Court of Appeals stated in *Spurlock*:

> Where no response to a summary judgment motion is properly before a district court, the court is under no duty to "search the entire record to establish that it is bereft of a genuine issue of material fact." [*Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989)]. Rather, the district court may rely upon the facts advanced by the movant. *Id.* Federal Rule of Civil Procedure 56[c] requires that the nonmoving party's response designate specific facts demonstrating the existence of genuine issues of material fact. Fed. R. Civ. P. 56[c]. The nonmoving party is deemed to have waived its opportunity to designate facts in accordance with Rule 56[c] when it fails to properly file a response. [*Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 405 (6th Cir. 1992)]. This court has stated that it is not the role of the district court to develop facts for the nonmoving party. *Id.* at 406.

*Spurlock v. Whitley*, 79 F. App'x 837, 839 (6th Cir. 2003) (unpublished).

**II. Factual Background**

On April 1, 2012, Nick's and Balsam Branch Transport ("Balsam Branch") entered into an Equipment & Permit Contract/Lease Agreement. (Def.'s Mot., Ex. B.) The agreement identified Balsam Branch as the contractor and Nick's as the Lessor. (*Id.*)

On or about January 9, 2013, Killam sent a Freight Pick-Up Order to Cedric Freight Brokerage to pick up twenty-five skids of steel from Richland Metals in Chaska, Minnesota, for delivery to Continental Metals in Gibraltar, Michigan. (*Id.*,

3

Ex. C.)  Cedric Freight Brokerage then contracted with Balsam Branch for the transport of the load of steel.  (*Id*., Ex. D.)

A Balsam Branch representative signed the rate confirmation agreement on January 9, 2013, as the carrier.  (*Id*.)  A Straight Bill of Lading was then issued, identifying Balsam Branch as the carrier, Richland Metals as the shipper, and Continental Metals as the consignee.  (*Id*., Ex. E.)

The load of steel was picked up on January 10, 2013, in Chaska, Minnesota, and delivered the following day in Gibraltar, Michigan.  (*Id*.)  A notation on the Bill of Lading provides: "3 Bundles on [b]ack of truck are wet."  (*Id*.)

Nick's believes that Killam thereafter made a claim with Cedric Freight Brokerage for damage to three (3) skids of steel.  Cedric Freight Brokerage completed a Standard Form for Presentation of Loss and Damage Claims on March 18, 2013, identifying Balsam Branch as the carrier for the three skids of damaged steel.  (*Id*., Ex. F.)  The total damages claimed were $2,347.61.  (*Id*.)

Cedric Freight Brokerage completed an amended Standard Form for Presentation of Loss and Damage Claims on May 14, 2013, now claiming that all twenty-five skids of steel were damaged in transport.  (*Id*., Ex. G.)  Again, the carrier listed was Balsam Branch.  (*Id*.)

At some point, a Cargo Claim Questionnaire was completed. The questionnaire identified Richland Metals as the shipper, Continental Metals as the consignee, and Killam as the cargo broker. (*Id*., Ex. H.)

On February 19, 2013, Killam filed a claim with its insurance carrier, Acuity, for damage to the shipment of steel. (*Id*., Ex. I.) The date of the loss was listed as February 18, 2013. (*Id*.) The loss is described as follows on the claim:

> Client said that he bought steel with company in Gibralt[a]r MI and they sent steel directly to client and that it was not correct. Then it was shipped back but it was damaged by the carrier that our client contracted with to ship it back which was Cedric Freight Brokerage. But then they subcontracted to another carrier who then subcontracted to another carrier which was Nick's Trucking. The goods are in the amount of $20,000 and the pallets got wet which then rusted the steel. The client has not paid the company in Gibralt[a]r yet. He is on good terms with the client in Gibralt[a]r and would like to notify Acuity of this pending claim.

*Id*.

On May 14, 2013, Brian Barth, a field claim adjuster at Great West Casualty Company sent a letter to Tim McAndrews at Cedric Freight Brokerage. (*Id*., Ex. J.) Great West insured Balsam Branch. (*Id*.) The letter was in response to Cedric Freight Brokerage's claim for coverage for the damaged steel. (*Id*.) Great West denied coverage, concluding that it was impossible for the steel to rust in the 24-hour period it was in transport between Chaska, Minnesota and Gibraltar, Michigan. (*Id*.)

5

On August 14, 2013, a representative on behalf of Killam entered into a release of all claims with Acuity for the consideration of $14,460.21, for loss that occurred "on or about the 18 day of February, 2013, at or near 19800 Gibralt[a]r Road, Gibralt[a]r, MI". (*Id*., Ex. K.)  On September 5, 2013, Jill M. White, Field Claims Representative at Acuity, sent a letter to Ken Zoliner of General Casualty Company of Wisconsin, which stated:

> We have completed our investigation of the above referenced loss and find that the responsibility rest [sic] with your insured, Nick's Trucking & Excavating.  The steel sustained water damage when your insured was hauling the load back to the supplier.

(*Id*., Ex. L.)

On May 28, 2015, Acuity filed this lawsuit as Killam's subrogee.  (ECF No. 1.)  The Complaint alleges a single claim, seeking damages under the Carmack Amendment.  (*Id*.)  The Summons and Complaint provided the first written notice of the loss to Nick's. (Def.'s Mot., Ex. M.)

### III.   Applicable Law and Analysis

Nick's asserts three arguments in support of its summary judgment motion.  First, Nick's contends that Acuity lacks standing to bring a claim under the Carmack Amendment.  Next, Nick's argues that Balsam Branch, not Nick's, was the carrier of the steel.  Lastly, Nick's contends that notice was never sent to it, as required under the Carmack Amendment.  Because Nick's first argument provides grounds for granting its motion, the Court addresses only that argument.

6

"The Carmack Amendment . . . created a national scheme of carrier liability for loss or damages to goods transported in interstate commerce." *Exel, Inc. v. S. Refrigerated Transport, Inc.*, 807 F.3d 140, 148 (6th Cir. 2015). It made carriers strictly liable, thus relieving shippers of the burden of determining which carrier caused the loss or damage to the goods and of proving negligence. The Carmack Amendment allows "the person entitled to recover under the receipt or bill of lading" to bring a cause of action against the carrier of its cargo for damage to the cargo. 49 U.S.C. § 14101(b)(1). "Section 14706 simply provides that carriers providing transportation are liable to the person entitled to recover under the receipt or bill of lading for actual loss or injury to the property." *Trepel v. Roadway Express, Inc.*, 194 F.3d 708, 711 (6th Cir. 1999).

The Sixth Circuit Court of Appeals recently held that the Carmack Amendment does not provide a non-shipper broker with a direct right to sue under the statute. *Exel*, 807 F.3d at 148-49 (citing *Edwards Bros., Inc. v. Overdrive Logistics, Inc.*, 581 S.E.2d 570, 572 (Ga. 2003) (stating that "the Carmack Amendment was enacted to protect the rights of shippers suing under a receipt or bill of lading, not brokers")). The *Exel* court pointed out that "under the plain terms of the statute, only a 'shipper and carrier' can enter into an agreement waiving rights under the statute." *Exel*, 807F.3d at 149 (citing 49 U.S.C. § 14101(b)(1)).

With respect to the present matter, the Straight Bill of Lading identifies Balsam Branch as the carrier for the load of steel, Richland Metals as the shipper, and Continental Metals as the consignee. (ECF No. 19, Ex. E.) Killam, the broker, is not referenced. (*Id.*) Acuity, as subrogee of Killam, stands in Killam's shoes and has no greater rights than Killam. *See United States v. California*, 507 U.S. 746, (1993) ("The subrogee, who has all the rights of the subrogor, usually cannot acquire by subrogation what another whose rights he claims did not have.") (internal quotation marks and citation omitted); *In re Lewis*, 398 F.3d 735, 747 (6th Cir. 2005) ("the subrogee acquires no greater rights than those possessed by the subrogor . . ..").

While concluding that the broker in *Exel* lacked standing to bring a direct cause of action under the Carmack Amendment, the Sixth Circuit concluded that the broker could bring a claim as the assignee of the shipper. 807 F.3d at 149. The court had before it a written assignment pursuant to which the shipper expressly assigned its claims against the carrier to the broker. *Id*. at 149, n.8. Here, however, Acuity is the assignee of the broker, not the shipper. Moreover, there has been no evidence presented to this Court of an assignment between Killam and Acuity.

The Court therefore holds that Acuity lacks standing to sue Nick's under the Carmack Amendment.

Accordingly,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (ECF No. 19) is **GRANTED**.

                                    s/ Linda V. Parker
                                    LINDA V. PARKER
                                    U.S. DISTRICT JUDGE

Dated: July 29, 2016

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, July 29, 2016, by electronic and/or U.S. First Class mail.

                                    s/ Kelly Winslow for Richard Loury
                                    Case Manager